UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ANTONIO D. ESPEY | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:02-cr-11 / 1:05-cv-352 |
| | ) | *Chief Judge Curtis L. Collier* |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM

Antonio D. Espey ("Espey") a federal prisoner, brings this *pro se* motion for post-conviction

relief pursuant to 28 U.S.C. § 2255 (Court File No. 1). Espey claims the affidavit, which formed

the basis for issuing the search warrant in his case, did not support a conclusion that probable caused

existed to search his residence. Espey argues trial counsel was ineffective for failing to argue the

affidavit did not contain sufficient facts for a finding of probable cause to issue the search warrant

in his case. Specifically, Espey contends there was an insufficient nexus between the out-of-state

bank robbery and Espey's residence, and that the issuing judge improperly relied upon confidential

information provided by confidential informants who were not witnesses to the bank robbery.

After a review of the record, the Court concludes Espey's § 2255 motion lacks merit and will

be **DENIED** (Court File No. 1). The record conclusively shows that Espey is not entitled to any

relief under 28 U.S.C. § 2255. Thus, there is no need for an evidentiary hearing. Rule 4 of the Rules

Governing Section 2255 Proceedings For The United States District Courts.


I.      **Procedural Background**

On January 23, 2002, a federal grand jury in Chattanooga, Tennessee, returned a one-count

indictment charging Espey with being a convicted felon in possession of ammunition in violation

of 18 U.S.C. § 922(g)(1) (Crim. Court File No. 2). The case was tried on April 8, 2002, and the jury

returned a verdict of guilty on April 9, 2002 (Crim. Court File Nos. 18-21). Subsequent to his conviction, a Presentence Investigation Report ("PSR") was prepared and provided to the parties. The probation officer determined that Espey qualified as a career offender pursuant to the United States Sentencing Guidelines ("USSG.") § 4B1.1 and thus his total offense level was 33. Based on a total offense level of 33 and a criminal history category of V, Espey's guideline range was 210 to 262 months. This Court held a sentencing hearing on November 8, 2002, and sentenced Espey to a term of 210 months imprisonment, the lowest point of the guideline range. Judgment was entered on December 9, 2002. Espey filed several *pro se* motions requesting appointment of new counsel and a new trial, which the Court denied. Pursuant to an Order of this Court, the Clerk filed a notice of appeal on Espey's behalf on April 10, 2003 (Crim. Court File No. 39).

Espey took a direct appeal. On August 19, 2004, the United States Court of Appeals for the Sixth Circuit rendered its decision affirming the judgment of conviction and sentence (Crim. Court File No. 47). The final mandate was issued by the Sixth Circuit on September 13, 2004 (Crim. Court File No. 48). The United States Supreme Court denied *certiorari* on January 10, 2005 (Crim. Court File No. 49). Espey timely filed the instant § 2255 motion on December 1, 2005 (Court File No. 1).

## II.    **Standard of Review**

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself,

together with the annexed exhibits and prior proceedings in the case reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)(citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); see also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

III.    **Facts**

The following pertinent facts are taken from the offense conduct section provided in the

Presentence Investigation Report ("PSR"):

> 6.    On January 11, 2002, officers and agents of the Federal Bureau of Investigation, United States Marshal's Services and the local Judicial Task Force executed a search warrant at the residence of the defendant **Antonio DeJong Espey** located at 208 South Moore Road, Chattanooga, Tennessee. The search warrant was issued pursuant to information implicating the defendant in a robbery of the Colonial Bank in Scottsboro, Alabama on Friday, January 4, 2002.

> 7.    During the search, authorities seized two boxes of Winchester 9mm ammunition and one box of .357 caliber ammunition, two individual 9mm bullets and one black nylon holster.

> 8.    Mr. Espey had previous felony convictions and, as a result, the United States sought and obtained an indictment in the instant case. No indictment relating to the bank robbery in Scottsboro, Alabama has been returned as of this date.

(PSR, p. 3).

## IV.    <u>Analysis</u>

### A.    **Ineffective Assistance of Counsel**

Espey asserts that his trial counsel rendered ineffective assistance of counsel because he

failed to challenge the information in the affidavit supporting the warrant. Espey bears the burden

of proving he is entitled to relief by a preponderance of the evidence. *McQueen v. United States*,

58 Fed.Appx. 73, 76 (6th Cir. 2003), 2003 WL 68144, at *3 ("Defendants seeking to set aside their

sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a

preponderance of the evidence."). In order to demonstrate ineffective assistance of counsel, Espey

must show not only that his attorney's representation fell below the standard of competence

demanded of attorneys in criminal cases but also that there is a reasonable probability that, but for

the attorney's unprofessional errors, the result of the proceeding would have been different.

4

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

In *Strickland v. Washington*, the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

Espey claims counsel should have challenged the warrant on two grounds. First, Espey claims the information was insufficient to establish probable cause to search his home for evidence that he was involved in an out-of-state bank robbery because the affidavit supporting the search warrant failed to establish a sufficient nexus between the out-of-state bank robbery and his residence. Second, Espey claims the reliance on the information from the confidential informants about the bank robbery was improper because the confidential informants who provided that information received the information from another person; thus, rendering the information unreliable. Thus, to demonstrate ineffective assistance of counsel, Espey must demonstrate that the search warrant was defective. The Court will analyze the search warrant by setting forth the

pertinent facts from the affidavit which supported the search warrant; identifying the proper standard for probable cause to issue a search warrant; and finally, addressing the two challenges to the search warrant.

**B.      Search Warrant**

*1.      Affidavit*

The affidavit supporting the search warrant states that the affiant, Federal Bureau of Investigations Special Agent Paxton K. Stelly ("SA Stelly"), while investigating the bank robbery of the Colonial Bank in Scottsboro, Alabama, relied upon written and oral statements from officers of the Scottsboro Police Department, the Fort Oglethorpe Police Department, and other FBI Special Agents (Court File No. 9, Attachment 2). Based on his investigation, SA Stelly concluded Espey possessed evidence of his involvement in a bank robbery of Colonial Bank in Scottsboro, Alabama.

In the affidavit, SA Stelly described the bank robbery including the fact one of the two robbers (hereinafter referred to as "subject-one") carried two firearms, one in each hand, which he held, covering the victims, while the other robber collected the money. Subject-one was described as a black male, approximately 6'1" to 6'3", 220 lbs., with medium brown skin and a thin mustache, and wearing camouflage coveralls with the hood pulled up and a black cloth "Zorro" mask.[1] One of the witnesses described the firearms as pistols. One was described as a semi-automatic and somewhat worn. The others were described as a black pistol and a two toned with a black receiver and a silver slide. In addition, SA Stelly averred that surveillance camera photographs depicting the subjects are consistent with the descriptions provided by witnesses.

---

[1]      SA Stelly ran a Tennessee driver's license check on Espey which reflected his address was 208 South Moore Road, Chattanooga, TN and described him as 6'2" tall and weighing 250 lbs.

6

The getaway car was recovered along with a pack of Newport Cigarettes that was only missing one cigarette, and a plastic butane lighter. The information regarding the cigarettes was not disclosed to the public. Additionally, $2,449.00 was taken during the robbery but no bait bills or dye packs were included with the money.

Confidential Informant #1 (hereinafter "CI-1"), who had provided reliable information on one previous occasion, called Captain Dawe of the Scottsboro Police Department and informed him that he/she had overheard a conversation among several black men about the bank robbery. CI-1 interrupted the conversation and told the men he/she believed one of the bank robbers was "Jay Bird." One of the men responded that it was not "Jay Bird" but was two black males from Chattanooga, "Joe and Pork Chop." The speaker said he knew this "because the dumb n_ _ _ _left his cigarettes." CI-1 found out from her/his relatives that Joe was Joe Blair and he smoked Newport cigarettes and that Pork Chop was Antonio Espey. The relative also told CI-1 that Espey drove three different vehicles: a black sport utility vehicle (SUV), a black Caprice, and a black Cherokee.

In addition, the getaway car was determined to be stolen from a man in Fort Oglethorpe the day before the robbery. The man gave chase as his car was driven away by a black male with dreadlocks. The driver of his car appeared to be following a black SUV with tinted windows. The man chased his car and the black SUV to a dead-end where both cars jumped the curb and drove away. A witness observed the man chasing the two vehicles. On January 8, 2002, SA Stelly, Lt. Ron Latimer of the Scottsboro Police Department, and Detective David Scroggins of the Fort Oglethrope Police Department met with a witness who observed the theft of the getaway car. The witness added that the black SUV was shiny; had a Tennessee tag; was driven by a black male with a large round face, a large build, and very short hair who looked to be in his mid-30's; and that the

7

tinted windows were three inch by three inch squares of smoke colored tint in a checkered pattern.

On January 8, 2002, SA Stelly and Lt. Latimer traveled by 208 South Moore Road, the address listed on Espey's Tennessee driver's license and observed a shiny black Nissan Pathfinder SUV with three inch by three inch, smoke colored, checkered tinted windows matching the description given by the witness. The SUV had a Tennessee tag which was registered to a 1997 black Nissan Pathfinder registered to Kathy Espey at 208 South Moore Road.

A confidential informant (hereinafter "CI-2"), whose credibility had been well established in that he/she had provided information in the past seven months that led to the arrests of several individuals for violent crimes, including bank robberies, advised SA Jim Melia with the Chattanooga FBI, that Espey is married to Kathy Espey and that Espey and Blair are good friends and have committed crimes together in the past.

In addition, CI-2 advised that Espey owns several handguns and usually keeps one of them on his person. CI-2 saw guns in Espey's house two to three years prior. Additionally, CI-2 advised that Espey drove a black Nissan Pathfinder with checkered tinted windows, a Ford Mustang, and a Chevrolet Caprice.

A criminal record check revealed that Espey had been arrested seven times, including two arrests for robbery. At least one of the arrests had resulted in a conviction and a six year term of imprisonment. A check of Tennessee Department of Motor Vehicles records showed that Espey owns a Ford Mustang, Tennessee tag EEN 530, a Chevrolet coupe, Tennessee tag EEX 441, and a Chevrolet sedan, Tennessee tag DAH 866.

These are the facts and circumstances that the Magistrate Judge relied upon when determining that probable cause existed to believe there was evidence of the bank robbery at Espey's

residence, in his vehicles, or on his person.

### 2. *Probable Cause Requirement*

The Fourth Amendment provides "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Const. amend IV*. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir.), *cert. denied*, 546 U.S. 813 (2005).

When determining whether probable cause exists for purposes of issuing a search warrant, the Court must consider the totality of the circumstances as set out in the four corners of the affidavit and answer "the commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself); *Frazier*, 423 F.3d at 531. The issuing magistrate's "determination of probable cause is afforded great deference" and should be overturned "only if [he] arbitrarily exercised his discretion." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)).

9

Independent police corroboration of a confidential informant's story is not necessarily required to support probable cause, but where the affidavit lacks indicia of the informant's reliability, "courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532; *see also, United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005); *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *United States v. Allen*, 211 F.3d 970, 976 (6th Cir.) (*en banc*), *cert. denied*, 531 U.S. 907 (2000).

The Sixth Circuit in *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) described the application of the *Gates* test:

> In applying its "totality of the circumstances" test, the Gates court identified three factors in determining whether probable cause existed:  1) the basis of the informant's knowledge;  2) the reliability of the informant;  and 3) the corroborative evidence presented by the government.  *Gates*, 462 U.S. at 230-32, 245, 103 S.Ct. at 2328-29, 2335-36;  *Leake*, 998 F.2d at 1363.  The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328.  Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.*  The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates*, 462 U.S. at 233-34, 103 S.Ct. at 2329-30.

(Internal footnote omitted), *see also United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999).  The *Gates* Court reaffirmed that the proper standard for review of an issuing magistrate's probable cause determination is that the magistrate must have a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."  *Gates,* at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960).

Turning to Espey's specific claims, the Court will first address his claim that the affidavit did not provide sufficient information to demonstrate a nexus between the crime and his residence. As explained below, the affidavit supporting the search warrant sufficiently established a nexus

10

between Espey's residence and the evidence sought, *i.e.*, the instrumentalities and evidence of the bank robbery

> ### *a.*     *Nexus Between Residence and Instrumentalities of Bank Robbery*

Espey claims counsel was ineffective for failing to argue there was insufficient evidence to provide probable cause to search his home. Espey claims there was no evidence or substantial basis to support the search of his residence based on law enforcement's suspicion that he was involved in the bank robbery. Specifically, Espey claims S.A. Stelly filed an affidavit/warrant application requesting a search warrant for his residence "without an adequate factual basis to support probable cause that there was a link between the crime and that residence." (Court File No. 3, p. 13).

> ### *i.*     *Applicable Law*

It is well settled that an affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 233-35 (1983) ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision."). The affidavit, however, must demonstrate a "nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 3336-37 (6th Cir. 1998). In determining whether probable cause exists to support a search warrant, the Court must examine the totality of the circumstances, *see United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998), and apply a common sense review with deference to the magistrate's finding of probable cause. *United States v. Savoca*, 761 F.2d 292, 294 (6th Cir. 1985) (Upon the government's petition for rehearing, the Sixth Circuit, adhering to its prior opinion that probable cause did not support the search of the motel room because "[t]he generally permissible inference that bank

11

robbers tend to conceal the evidence of their crimes in 'places both accessible and private,' could not be used to support a determination of probable cause . . . [because] the crimes occurred over 2,000 miles from the motel room[,] . . . and more importantly, the affidavit did not specify the amount of time that had passed since the crimes." (internal citations and quotations omitted), nevertheless concluded, that in light of *United States v. Leon,* 468 U.S. 897 (1984), suppression was not warranted). "The critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Thus, there must be "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998).

"A magistrate may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (quoting *United States v. Savoca,* 761 F.2d 292, 298 (6th Cir. 1985) and (citing *United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir. 2001) (noting that a court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," and holding it was reasonable to infer that a suspected drug dealer would keep evidence of his crime at his residence (citation omitted)); *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) (holding that it was a reasonable inference that a bank robber would keep stolen currency in his residence despite the passage of more than two months between the time of the robbery and the search); *also see United*

*States v. Anderson,* 851 F.2d 727, 729 (4th Cir.1988), *cert. denied,* 488 U.S. 1031 (1989) (The court held, in a case involving the illegal sale of a gun silencer, "[i]t was reasonable for the magistrate to believe that the defendant's gun and silencer would be found in his residence. Therefore, even though the affidavit contains no facts that the weapons were located in the defendant's trailer, we reject this argument that the warrant was defective."); *United States v. Steeves,* 525 F.2d 33, 38 (8th Cir.1975) (noting in a bank robbery case that there is "little reason to believe that any of the bank's money ... would still be in the home," but "the same could not be said of the revolver"); *Bastida v. Henderson,* 487 F.2d 860, 861-62 (5th Cir.1973) (affirming a magistrate's finding of probable cause to search a suspect's residence for a gun used in an armed robbery).

In the instant case, as explained below, there was probable cause to believe the items searched for would be located at Espey's residence, in his car, or on his person, all of which the warrant permitted law enforcement to search. The warrant affidavit is based on eyewitness descriptions; testimony from confidential informants—both of whom have provided reliable information on at least one occasion in the past; law enforcement and driving records; and corroboration of Federal Bureau of Investigations Special Agent Stelly ("SA Stelly"). Moreover, given the evidence that indicated Espey was the bank robber who covered the occupants of the bank with two firearms, and the evidence that Espey was a convicted felon and possessed several handguns and usually kept one on his person, the issuing judge could have reasonably inferred Espey kept at least on handgun at his residence. *See United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) ("[W]e join other circuits which have held, in cases involving a variety of suspected crimes, that an issuing judge may infer that a criminal suspect keeps the "instrumentalities and fruits" of his crime in his residence."). The affidavit establishes more than a bare suspicion

13

incriminating evidence would be found in one of the locations to be searched; it establishes probable cause.

Espey does not contend that SA Stelly swore the affidavit in bad faith, or that the Magistrate Judge abandoned his role as a neutral arbiter in issuing the warrant. Espey claims the affidavit fails to provide a substantial basis for determining the existence of probable cause because there was no link between the bank robbery and his residence. The Court disagrees. Applying Sixth Circuit precedent, the facts contained in the affidavit provides the necessary nexus between Espey's residence and the evidence sought pursuant to the search warrant.

*ii.*     *Discussion*

The bank robbery occurred on January 4, 2002, and the search warrant was requested on January 10, 2002. The facts in the affidavit were provided by eye witnesses, confidential informants, law enforcement, police records, and driver's license records. The description given by the bank robbery eyewitnesses of the gun-toting robber; the information tying Espey to the vehicle involved in the theft of the getaway vehicle; the information that Espey owned firearms and was a convicted felon; and the information from CI-1 that Espey was involved in the bank robbery, was sufficient to

provide probable cause to believe that evidence from the bank robbery would be found at Espey's residence.

The most pertinent evidence sought from the bank robbery would arguably be the money, the weapons, and instrumentalities of the robbery. Although those items could be concealed elsewhere, it would be normal to expect a bank robber to conceal the money, firearms, and instrumentalities of the robbery at this residence so he would have control over those items. Sixth

14

Circuit precedent permits a magistrate to infer a nexus between a suspect and his residence, and specifically permits a magistrate to infer that a bank robber would keep stolen currency and instrumentalities of his crime at his residence. *See United States v. Williams* 544 F.3d at 687.

Based on the facts of this case and controlling precedent, it could reasonably be inferred that the instrumentalities of Espey's crime would be within his control. Assuming Espey committed the robbery, it would be reasonable to assume he immediately went to his home with his loot, his weapons, and the clothing he wore during the robbery. Additionally, although the banks money may all have been spent, it is reasonable to believe that one week later the weapon and Espey's clothing would still be at his residence.

The affidavit in this case contained sufficient facts that permitted the magistrate to draw the inference that evidence of the bank robbery would be found in Espey's home—namely, the information by the confidential informants, one of which identified Espey as one of the bank robbers, corroborating information from the eyewitnesses of the bank robbery whose description of one of the bank robbers matched Espey, the information from one of the confidential informants that Espey owns several handguns and usually keeps one on him, and information from the witnesses implicating Espey in the theft of the getaway car (Court File No. 9, Attachment).

Thus, the Court rejects Espey's claim that the affidavit was insufficient to support the search warrant as it was reasonable to believe the items to be searched for and seized would be located at Espey's residence. The warrant specified that things to be seized were "weapons, ammunition, cash, money strips, and other evidence of the crime of bank robbery as well as the fruits of the crime of bank robbery, more particularly described in Attachment A."

In summary, the facts alleged in the affidavit outlined the interrelation between Espey, the

getaway car theft, and the bank robbery, which supported a finding of probable cause that fruit and instrumentalities of the bank robbery would be found at Espey's residence. A black SUV with checkered windows and a Tennessee Tag, like the one Espey owns, was linked to the theft of the getaway car and SA Stelly observed a black SUV with checkered windows at Espey's residence. The eyewitness descriptions of the driver of the black SUV that assisted in the getaway car theft and the description of the gun-toting bank robber; the surveillance tape; along with the information from the confidential informants identifying Espey as one of the robbers and as possessing firearms; created the likelihood that evidence of the bank robbery would be concealed in an accessible, yet private location such as Espey's residence.

Therefore, under the totality of the circumstances, the facts provided the magistrate with a substantial basis for concluding that the search of Espey's residence would produce evidence related to the bank robbery. Furthermore, in light of Sixth Circuit case law, which permits issuing judges to infer that bank robbers often conceal evidence of their crimes in their residence, the affidavit provided a sufficient nexus between Espey's residence and evidence of the bank robbery. Accordingly, Espey is not entitled to any relief pursuant to § 2255 on this claim because counsel was not ineffective for failing to argue the affidavit did not provide a sufficient nexus between the crime and his residence.

**b.** ***Magistrate's Reliance Upon Information Provided by Confidential Informants and Other Unnamed persons***

Espey contends counsel should have attacked the affidavit supporting the search warrant on the additional ground that "reliance upon information not witnessed by reporting c/I concerning statements allegely [sic] to same by another c/I was unreliable." (Court File No. 1, p. 5). The Court

16

discerns that Espey is claiming the magistrate judge improperly relied upon the information provided by the confidential informants because some of the information provided by the confidential informants was based on evidence provided to them by other people. (Court File No. 9, Attachment).

I.       *Applicable Law*

"An issuing judge's findings of probable cause should be given great deference by the reviewing court and should not be reversed unless arbitrarily exercised." *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002), *cert. denied*, 539 U.S. 908 (2003).  If the issuing judge had a "substantial basis" for concluding that a search would uncover evidence of wrongdoing, then the warrant must be upheld." *Id.*  "A court must look to the "totality of the circumstances," . . . [and when an affidavit includes hearsay information from a confidential informant a court must consider the], 'veracity, reliability, and basis of knowledge' in order to answer 'the commonsense, practical question' of whether an affidavit is sufficient to support a finding of probable cause." *United States v. May*, 399 F. 3d 817, 822 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

In *Gates*, 462 U.S.  at 213, 238-39, the United States Supreme Court reaffirmed the totality of the circumstances analysis for determining whether probable cause exists to support a search warrant.  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for conclud[ing] that probable cause existed." *Id.* at 238-39.  The magistrate must be informed of some of the underlying circumstances from which the informant gained his knowledge and of the informant's veracity or

17

reliability. "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable . . . Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *United States v. Morales*, 238 F.3d 952, 953 (8th Cir. 2001). "Although either richness of detail or a heightened level of corroboration may be required where information is provided by an anonymous informant of unknown veracity . . . information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause. . . . In other words, if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999). "It is well settled that probable cause may be founded upon hearsay and information received from informants." *United State v. DeQuasie*, 373 F.3d 509 (4th Cir. 2004).

When a confidential informant provides information to support a search warrant, the issuing judge considers the informant's reliability and the basis of his knowledge. However, under the totality of the circumstances analysis, both factors are not required to be present before a warrant may issue. Information obtained from an informant is sufficiently reliable if it is corroborated by other evidence or if the informant has a history of providing reliable information. *See United States v. Lucca*, 377 F.3d 927 (8th Cir. 2004). An affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257 (1960), but the magistrate must be informed of some of the underlying circumstances from which the informant reached his conclusions and from which the officer concluded the informant was 'credible or his information was reliable. Hearsay evidence, including multiple layers of hearsay

evidence, may support a finding of probable cause for a search warrant, so long as the officer has

knowledge of other matters that reasonably corroborate the informant's statements or evidence of

the informant's reliability and veracity. *See United States v. Mathis*, 357 F.3d 1200 (10th Cir. 2004).

Thus, "information received from an informant whose reliability is not established may be sufficient

to create probable cause when there is some independent corroboration by the police of the

informant's information." *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000).

*ii.*     *Discussion*

In the instant case, the affidavit contains indicia of the reliability of the confidential

informants, thus, their prior track record with law enforcement is a substantial basis for crediting the

hearsay presented. *See United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("If the prior track

record of an informant adequately substantiates his credibility, other indicia of reliability are not

necessarily required."). Both confidential informants had provided reliable information in the past.

CI-1 had provided reliable information to Captain Dawe, who was investigating the bank robbery,

on one previous occasion. Although the basis of the informant's knowledge about Espey came from

a conversation he/she had with a group of several black men whom he/she declined to identify, the

Court observes that three days after the bank robbery CI-1 initiated contact with Capt. Dawe of the

Scottsboro Police Department, who was investigating the bank robbery, and told him he/she had

overheard a conversation about the bank robbery. During the conversation CI-1 was told that two

black males from Chattanooga, "Joe and Pork Chop," committed the bank robbery and left cigarettes

behind. Law enforcement had not disclosed the fact that the Newport cigarettes were found in the

abandoned Pontiac to the public, which lends credibility and reliability to the information. CI-1

knew Joe was Joe Blair, and one of his relatives told him Pork Chop was Antonio Epsey and Blair

19

smoked Newports, the type of cigarettes found in the abandoned getaway car. The relative also told CI-1 that Espey drove three cars: a black sport utility vehicle (SUV), a black Caprice, and a black Cherokee. Evaluating CI-1's statements, along with the other information contained in the affidavit, the magistrate judge could reasonably infer that the information was reliable since his information was corroborated with other evidence. For example, he was told cigarettes were left in the vehicle and that information had not been disclosed to the public.

CI-2's credibility had been established in the seven months prior to the bank robbery because he/she had provided information to Federal Bureau of Investigations Special Agent Jim Melia ("SA Jim Melia") that had led to the arrests of several individuals for violent crimes including bank robberies. In addition, some of the information provided by CI-1 was corroborated by CI-2, who stated Blair and Espey were good friends and had committed crimes together, and that Espey drove a black Nissan Pathfinder with checkered tinted windows, a Ford Mustang, and a Chevrolet Caprice. Additionally, CI-2's information was corroborated by some of the other evidence law enforcement obtained from their investigation. This information, along with all of the other proof, adequately supports the magistrate judge's conclusion that, based on the totality of the circumstances, there was a fair probability that contraband or evidence of the bank robbery would be found at Espey's residence.

The Court concludes that, based on the totality of the circumstances, there was substantial information in the affidavit upon which the issuing judge could conclude the informants were reliable. The affidavit in the present case—which contains information that both confidential informants have previously provided reliable information, in addition to corroboration supplied by law enforcement's investigation, statements of the eyewitnesses to the car theft and bank robbery,

and the information that the bank robbers left cigarettes (a fact that had not been disclosed to the public)—is sufficient, under the totality of the circumstances, to support the magistrate judge's conclusion that probable cause existed. Accordingly, in the instant case the Court concludes the magistrate judge had a substantial basis for finding the confidential informants reliable and concluding probable cause existed to issue the search warrant.

Nevertheless, even assuming for the sake of discussion, that the affidavit did not establish probable cause existed to issue the search warrant, Espey still would not be entitled to any relief on this claim based on the good-faith exception to the exclusionary rule as explained below.

### c. *Good-Faith Exception to Exclusionary Rule*

In *United States v. Leon*, 468 U.S. 897 (1984), the United States Supreme Court identified a good-faith exception which permits the exclusionary rule to be "modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905. "[T]he 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id*. at 923, n. 23. The Court noted, however, that the "good faith" exception is not boundless and is inappropriate in at least three circumstances. First, the exception does not apply when the affidavit contains knowing or reckless false information which is the basis for finding probable cause; second, when the magistrate judge abandons his neutral and detached role and instead, serves merely as a rubber stamp for law enforcement; and third, when the affidavit fails to provide a substantial basis for determining the existence of probable cause and is nothing more than a "bare bones' affidavit, for example, when the warrant is so facially deficient that it fails to particularize the place to be searched or the things

21

to be seized. *Id.* at 914-23. Thus, the "good faith" exception provides that suppression is an appropriate response only when the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

Espey does not allege, nor does the Court conclude, that any of the three exceptions prohibiting the application of the "good faith" exception are present in this case. Specifically, Espey does not make a proper allegation that the officer lied or recklessly misstated the truth in the warrant application, nor is there any allegation or indication that the issuing judge abandoned his judicial role. In addition, the affidavit is not a bare bones affidavit. Consequently, the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable—in other words, the affidavit was not such that a "reasonably well-trained officer would have know that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922-26 n. 23.

The affidavit provides facts of the investigation and the Court concludes that a reasonably well-trained officer would not have known the search was illegal despite the magistrate's authorization. Therefore, assuming for the sake of discussion the affidavit did not establish probable cause, the Court concludes that the good faith exception would be applicable and prevent the exclusion of the evidence. The officer(s) reasonably relied upon the warrant to search Espey's residence since the affidavit connected Espey to the residence, the theft of the getaway vehicle, and the bank robbery, and a reasonably well-trained officer could conclude that, based on the type of evidence to be sought—instrumentalities of the bank robbery and its proceeds—the defendant would probably keep such evidence within his close control.

Accordingly, the Court cannot conclude the affidavit was "so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable," *see Leon*, 468 U.S. at 923, or that "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," *see id.* at n. 23. Since the affidavit provided probable cause to support the search and alternatively, because the affidavit was not so lacking in probable cause as to render official belief in its existence entirely unreasonable, Espey is not entitled to any relief on his claim counsel was deficient for failing to challenge the search warrant.

## IV.     Conclusion

Espey has failed to sustain his burden of proof and is not entitled to relief on his ineffective assistance of counsel claim. Espey has not demonstrated the magistrate judge lacked a substantial basis for concluding that probable cause existed to issue the search warrant. Consequently, Espey has failed to demonstrate counsel's performance was below professional standards and that counsel's alleged deficient performance caused him to suffer any prejudice. Hence, Espey has failed to present

any facts which establish his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255. Espey is not entitled to any relief under § 2255.

A judgment will enter **DENYING** Espey's motion (Court File No. 1).


/s/_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**